IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____ )
JG TECHNOLOGIES, LLC,                   )
                                        )
                  Plaintiff,            )
                                        )
         v.                             )        No. 20-455C
                                        )
THE UNITED STATES,                      )        Filed: October 29, 2021
                                        )
                  Defendant.            )        Reissued: November 10, 2021
_____ )

## OPINION AND ORDER

Before the Court is the Government's Partial Motion to Dismiss Plaintiff JG Technologies,

LLC's patent infringement claims under Rules 12(b)(1) and 12(b)(6) of the Rules of the United

States Court of Federal Claims ("RCFC"). Except for the claims related to two procurements by

the Transportation Security Administration ("TSA") of Thruvision passive detection equipment,

the Government argues that Plaintiff's claims are barred by the statute of limitations or precluded

as extraterritorial and that Plaintiff's allegations fail to adequately state claims upon which relief

can be granted. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN**

**PART** Defendant's Motion.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff owns United States Patent No. 7,952,511 (filed Apr. 7, 2000), entitled "Method

and Apparatus for the Detection of Objects Using Electromagnetic Wave Attenuation Patterns"

("'511 Patent"). Am. Compl. ¶ 4, ECF No. 11. James L. Geer is the sole inventor of the '511

Patent as well as the controlling member and owner of JG Technologies. *Id.* ¶ 5.

1.    <u>Subject Matter of the '511 Patent</u>

The '511 Patent claims inventions relating to detection of stealth objects (such as enemy aircraft, missiles, satellites, drones, tanks, trucks, and cars) using electromagnetic wave attenuation patterns. *Id.* ¶¶ 12–13, 16; '511 Patent at 2:25–35, ECF No. 11-1.  Unlike other object detection systems, the '511 Patent discloses technology that "provides a region of detection significantly larger" than the "line of sight" methodology used at the time of its creation, '511 Patent at 2:49–51, and provides a means of recognizing the object, not just detecting it, ECF No. 11 ¶ 20.  The relevant claims by which the '511 Patent accomplishes these ends are defined as follows:

**1**: A method for detecting an object, comprising the steps of:

defining expected characteristics of a scattered invisible electromagnetic radiation pattern to be detected at a receiver;

attenuating at least a portion of an invisible electromagnetic radiation field by a presence of an object within a path of invisible electromagnetic radiation, said invisible electromagnetic radiation propagating off axis with respect to the receiver toward a scattering medium; and

detecting the attenuation to indicate a presence of the object. . . .

**3**: The method according to claim 1, further comprising the step of emitting a beam of electromagnetic radiation and reflectively scattering the electromagnetic radiation. . . .

**5**: The method according to claim 1, wherein the electromagnetic radiation is man-made terrestrial origin radiation selected from the group consisting of radio frequency, microwave, and infrared radiation. . . .

**14**: The method according to claim 1, wherein an identification of the object is made based on a computed distance to the object, the detected attenuation of the electromagnetic radiation, and a predetermined characteristic of the object.

**15**: An apparatus for performing the method of claim 1, comprising:

means for storing expected characteristics of scattered electromagnetic radiation to be received at a receiver; and

a receiver for detecting the attenuation to indicate a presence of the object.

**16**: A method for detecting an object, comprising the steps of:

defining expected characteristics of diffuse source electromagnetic background radiation to be received at a receiver;

attenuating at least a portion of diffuse source electromagnetic background radiation received at the receiver by a presence of an object; and

detecting the attenuation to indicate a presence of the object.

'511 Patent at 14:49–60, 14:63–65, 15:4–7, 16:1–4, 16:5–11, 16:12–21. According to Plaintiff, each of these claims, with the exception of Claim 5, "were not well-understood, routine, or conventional" at the time Mr. Geer filed his patent application. ECF No. 11 ¶¶ 26, 31, 34.

    2.    The '407 Application and Mr. Geer's Written Claim for Compensation

In April 2000, Mr. Geer filed U.S. Patent Application No. 09/545,407 ("'407 Application") for the invention eventually covered by the '511 Patent. *Id.* ¶¶ 8, 35. On May 30, 2000, the United States Air Force recommended that the '407 Application be placed under secrecy order and, more than a year later, formally requested that the United States Patent & Trademark Office ("USPTO") issue a secrecy order withholding a grant of patent. *Id.* ¶¶ 35, 36. The Air Force maintained that disclosure of the invention would be "detrimental to the national security." *Id.* ¶ 36. On August 1, 2001, the USPTO issued the first of many secrecy orders for the '407 Application. *Id.* ¶ 37.

The USPTO issued a Notice of Allowability in August 2001, providing that, but for the secrecy order, the '407 Application was in condition for allowance. *Id.* ¶ 38. From 2002 to 2009, the Air Force annually renewed its secrecy order request. *Id.* ¶ 39. Plaintiff alleges that Mr. Geer petitioned to rescind the secrecy orders only once, in January 2008. *Id.* ¶ 40.

On July 8, 2008, Mr. Geer filed a claim for compensation with the Air Force under 35 U.S.C. § 183 for damages arising from the Government's alleged use of his stealth object detection invention during the pendency of the secrecy order. *Id.* ¶ 46. The Air Force Legal Operations

Agency ("LOA") acknowledged the claim and requested access to the '407 Application but provided no estimate or timeline for a response to his claim. *Id.* ¶¶ 47–48. Soon after, at the Air Force's request, the USPTO denied Mr. Geer's January 2008 petition to rescind the secrecy order. *Id.* ¶ 41. Despite Mr. Geer's prompting, by September 2009 the LOA was still investigating Mr. Geer's administrative claim for compensation. *See id.* ¶ 50. After again requesting in August 2009 that the secrecy order be renewed (which the USPTO granted), the Air Force finally recommended recission of the secrecy order on December 12, 2009. *Id.* ¶ 42.

The LOA, however, still did not issue a decision on Mr. Geer's claim for compensation. Rather, in early 2010, the LOA requested that Mr. Geer notify it when either one of two events occurred: (1) the USPTO issued the '407 Application, or (2) Mr. Geer ceased prosecuting the '407 Application. *Id.* ¶ 55. The '511 Patent issued on May 31, 2011, and Mr. Geer duly informed the LOA of that event on June 16, 2011. *Id.* ¶¶ 43, 56. Two years later, in July 2013, the LOA denied Mr. Geer's claim for compensation. *Id.* ¶ 57. Mr. Geer never sued for damages under § 183.

3.     Mr. Geer's Second Claim for Compensation

Over six years later, on September 30, 2019, Mr. Geer contacted the Intellectual Property Staff of the United States Department of Justice ("DOJ") regarding the Government's alleged infringement of the '511 Patent. *Id.* ¶ 66. At DOJ's direction, Mr. Geer sent a letter to the LOA on October 18, 2019, detailing the '511 Patent's history, including the repeated secrecy orders and the Government's alleged use of stealth aircraft detection technology during the pendency of those orders. *Id.* ¶¶ 67–68. He attached to the letter the '511 Patent and claim charts detailing the Government's alleged infringement of claims 1 and 15 of the '511 Patent. *See* App. to Def.'s Partial Mot. to Dismiss First Am. Compl. at 16–39, ECF No. 17-1. The LOA's response directed Mr. Geer to the Department of Defense's ("DoD") procedures for filing a claim for compensation

4

as outlined in the Defense Federal Acquisition Regulation Supplement ("DFARS"), 48 C.F.R.

§ 227.7000 *et seq.* (2011) ("DFARS 227.70"). ECF No. 11 ¶ 69. Specifically, the letter requested

that Mr. Geer submit information satisfying DFARS 227.7004(a)(4), (b)(2)–(8), and (b)(10)–(11).[1]

---

[1] DFARS 227.7004(a)(4) requires that a claim for compensation "must be actually communicated to and received by a Department, agency, organization, office, or field establishment within the Department of Defense," "in writing," and should include, among other information, "(4) A sufficient designation of the alleged infringing item or process to permit identification, giving the military or commercial designation, if known, to the claimant."

DFARS 227.7004(b) provides a list of material and information that is "generally necessary in the course of processing a claim of patent infringement" and encourages claimants "to furnish this information at the time of filing a claim to permit the most expeditious processing and settlement of the claim." This includes, as relevant here:

(2) Identification of all procurements known to claimant which involve the alleged infringing item or process, including the identity of the vendor or contractor and the Government procuring activity.
(3) A detailed identification of the accused article or process, particularly where the article or process relates to a component or subcomponent of the item procured, an element by element comparison of the representative claims with the accused article or process. If available, this identification should include documentation and drawings to illustrate the accused article or process in suitable detail to enable verification of the infringement comparison.
(4) Names and addresses of all past and present licenses under the patent(s), and copies of all license agreements and releases involving the patent(s).
(5) A brief description of all litigation in which the patent(s) has been or is now involved, and the present status thereof.
(6) A list of all persons to whom notices of infringement have been sent, including all departments and agencies of the Government, and a statement of the ultimate disposition of each.
(7) A description of Government employment or military service, if any, by the inventor and/or patent owner.
(8) A list of all Government contracts under which the inventor, patent owner, or anyone in privity with him performed work relating to the patented subject matter.
. . .
(10) A copy of the Patent Office file of each patent if available to claimant.
(11) Pertinent prior art known to claimant, not contained in the Patent Office file, particularly publications and foreign art.

*Id.*

ECF No. 17-1 at 41–42.  Of particular importance to the LOA was the need to identify accused programs or products Mr. Geer believed infringed the '511 Patent.  *Id.* at 42.

On November 21, 2019, Mr. Geer responded to the ten categories of information requested. ECF No. 11 ¶ 70; *see* ECF No. 17-1 at 43–45.  While satisfied with several of Mr. Geer's responses, the LOA stated that it still required "[a] sufficient designation of the alleged infringing item or process," DFARS 227.7004(a)(4), and a "detailed identification of the accused article or process," *id.* 227.7004(b)(3).  *See* ECF No. 17-1 at 47.  In response, Mr. Geer gave a sworn declaration providing his basis for the Government's alleged infringement of the '511 Patent and stating that he had attempted to determine the "military or commercial designation of items or processes" but was ultimately unsuccessful.  *Id.* at 52; *see id.* at 51–53.  The LOA accepted this declaration as complying with DFARS 227.7004(a)(6) and docketed Mr. Geer's claim with an effective date of January 23, 2020.  *Id.* at 63.

### B.    Procedural History

Plaintiff filed its Complaint in this Court on April 17, 2020, alleging that the Government, acting through a variety of agencies, infringed the '511 Patent under 28 U.S.C. § 1498(a) by using the inventions described in claims 1, 14, and 15 to detect aircraft, as well as using the invention in claim 16 for passive millimeter wave and passive terahertz detection.  Pl.'s Compl. ¶¶ 2, 52–53, ECF No. 1.  The Government moved to dismiss Plaintiff's Complaint under RCFC 12(b)(1) and 12(b)(6).  *See* Def.'s Mot. to Dismiss Pl.'s Compl., ECF No. 9.

On July 7, 2020, Plaintiff filed its Amended Complaint.  *See* ECF No. 11.  Besides reiterating its original claims, Plaintiff provided several additional examples of Government infringement.  *See, e.g.*, *id.* ¶¶ 92–103.  These include new allegations that the TSA, Air Force, Customs and Border Protection ("CBP"), Army, and the State Department's Bureau of

International Narcotics and Law Enforcement Affairs ("INL") contracted with a company named Thruvision to use passive wave and passive terahertz detection technologies. *Id.* ¶¶ 92–96; Passive Detection Claim Chart at 4, ECF No. 11-3.  Plaintiff also alleges that the Government violated claims 1, 3, 5, 14, and 15 of the '511 Patent, either literally or through the doctrine of equivalents, through its use of autonomous vehicles, such as MIDARS.  ECF No. 11 ¶ 97.  Finally, it claims that the Government violated at least claims 1 and 15 through use of vehicles with collision detection systems of any kind, pointing to the Government's purchase of Chevrolet vehicles and Ford Police Explorers, as well as the repair of a 2018 Dodge Charger.[2] *Id.* ¶¶ 98–102.  Although the statute of limitations in the Court of Federal Claims is six years, Plaintiff argues that under 35 U.S.C. § 286 it is entitled to 1,823 days of tolling—the period between submission of Mr. Geer's claim for compensation under 35 U.S.C. § 183 and the Air Force's denial of that claim—for recovery of damages for patent infringement.  ECF No. 11 ¶¶ 61–62.

The Government moved to dismiss the Amended Complaint on September 18, 2020, for lack of subject-matter jurisdiction and failure to state a claim, arguing that all of Plaintiff's claims, except those based on two post-2014 procurements by TSA of Thruvision equipment, are time-barred by the six-year statute of limitations under 28 U.S.C. § 2501, extraterritorial under 28 U.S.C. § 1498(c), or otherwise insufficiently pled.  *See* Def.'s Partial Mot. to Dismiss First Am. Compl. at 7, ECF No. 17.  The Motion is fully briefed and ripe for decision.  *See* Pl.'s Resp. in Opp'n to

---

[2] The Court will address Plaintiff's infringement claims by reference to the following categories: (1) aircraft detection claims, (2) passive detection claims, (3) autonomous vehicle claims, and (4) vehicle collision detection claims.

Def.'s Partial Mot. to Dismiss, ECF No. 18; Def.'s Reply in Support of Its Partial Mot. to Dismiss, ECF No. 19.[3]

## II.   DISCUSSION

### A.   Standards of Review

1.   RCFC 12(b)(1)

Jurisdiction is a threshold requirement. If the Court "determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." RCFC 12(h)(3); *see* RCFC 12(b)(1). The burden of proving subject-matter jurisdiction lies with the plaintiff. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In determining whether a plaintiff has met this burden on a motion to dismiss pursuant to RCFC 12(b)(1), the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236–37 (1974)). If jurisdictional facts are disputed, the plaintiff may not rest on mere allegations; instead, it must produce "competent proof" sufficient to support its allegations. *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936); *see Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence." (citation omitted)). In such case, the Court is not strictly confined to the pleadings and may "find facts on its own." *Meyers v. United States*, 96 Fed. Cl. 34, 43 (2010) (citation omitted).

Claims brought in the Court of Federal Claims are subject to a six-year statute of limitations period. 28 U.S.C. § 2501 (2004). Any claims first accruing more than six years before the filing

---

[3] Upon filing, the First Amended Complaint superseded Plaintiff's original complaint and became the controlling pleading. *See Smith v. United States*, 120 Fed. Cl. 455, 460 (2015). As a result, the Government's Motion to Dismiss Plaintiff's Complaint, ECF No. 9, is moot. *See id.*

of a complaint are beyond the Court's jurisdiction.  *Id.*; *see John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (determining that the limitations period in § 2501 is jurisdictional in nature).

    2.    <u>RCFC 12(b)(6)</u>

On a motion brought under RCFC 12(b)(6), the question is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236.  Dismissal is therefore appropriate under RCFC 12(b)(6) when a plaintiff's allegations do not "raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  When evaluating the sufficiency of a plaintiff's claim, the Court assumes the truth of a complaint's factual allegations and "draw[s] all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797.  The Court "must consider the complaint in its entirety," including "documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.**    **Many, But Not All, of Plaintiff's Claims Under 28 U.S.C. § 1498(a) Are Time-Barred.**

The Court has "jurisdiction only where and to the extent that the government has waived its sovereign immunity." *Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002) (quoting *Overall Roofing & Constr. Inc. v. United States*, 929 F.2d 687, 688 (Fed. Cir. 1991)).  Waivers of sovereign immunity are strictly construed; they "cannot be implied but must be unequivocally expressed" in statutory text. *United States v. King*, 395 U.S. 1, 4 (1969); *see Lane v. Pena*, 518

U.S. 187, 192 (1996).  The United States has waived its sovereign immunity for patent infringement claims brought under 28 U.S.C. § 1498(a).  That provision grants this Court exclusive jurisdiction over an action against the United States "[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same." 28 U.S.C. § 1498(a) (1998); *Hitkansut LLC v. United States*, 130 Fed. Cl. 353, 367 (2017).

A patent infringement claim brought under § 1498(a) must be brought within six years of the date such claim first accrues.  *See* 28 U.S.C. § 2501.  Section 1498(a) claims accrue upon the first usage or manufacture of an accused device following the issuance of an allegedly infringed patent; subsequent or repeated uses do not restart the limitations period.  *Starobin v. United States*, 229 Ct. Cl. 67, 70–71 (1981) (per curiam).  Instead, "once the device is available for use, the license is taken, the patent owner's cause of action accrues, and the patent owner has six years to bring its case." *Ross-Hime Designs, Inc. v. United States*, 139 Fed. Cl. 444, 459 (2018) (citing *Starobin*, 229 Ct. Cl. at 70–71).  If the only alleged infringement precedes the limitations period, "recovery as to that particular device is barred forever by 28 U.S.C. § 2501." *Starobin*, 229 Ct. Cl. at 71–72.  Consequently, for its claims to survive dismissal, Plaintiff must provide "relevant, competent evidence" demonstrating by a preponderance of the evidence that it filed suit within six years of the accrual of its infringement claims.  *Hornback v. United States*, 52 Fed. Cl. 374, 377 (2002); *see Unitrac, LLC v. United States*, 113 Fed. Cl. 156, 161 (2013), *aff'd*, 589 F. App'x 990 (Fed. Cir. 2015).

With the enactment of 35 U.S.C. § 286, however, Congress provided some flexibility to patent claimants where they first pursue an administrative claim before filing suit, allowing the

limitations period to be tolled for the period during which an agency considers a claim for compensation.  35 U.S.C. § 286 (1952).  Section 286 provides:

> In the case of claims against the United States Government for use of a patented invention, the period before bringing suit, up to six years, between the date of receipt of a written claim for compensation by the department or agency of the Government having authority to settle such claim, and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall not be counted as part of the [six-year] period. . . .

*Id.*  In other words, if an administrative claim is filed, "[t]he tolling period under 35 U.S.C. § 286 is equal to the shorter of: (i) six years or (ii) the time between the receipt of the claim by the government and the mailing of a notice of denial of the claim by that agency or department." *McCreary v. United States*, 35 Fed. Cl. 533, 545 (1996), *aff'd*, 114 F.3d 1206 (Fed. Cir. 1997). Before the Court may apply § 286, Plaintiff bears the burden of demonstrating that it filed a "written claim for compensation" with the appropriate agency.  35 U.S.C. § 286.

One preliminary point of note needs addressing as to claim accrual.  The Government appears to contend that, if it used Plaintiff's invention before issuance of the '511 Patent, pre-issuance use constitutes first accrual of Plaintiff's claim.  *See, e.g.*, ECF No. 17 at 17 (citing *Martin v. United States*, 99 Fed. Cl. 627, 632–33 (2011)).  If that is its view, the Government misstates the law on this point: "when procurement of an item precedes the issuance of the patent rights, [] the first use of the item subsequent to the issuance of the patent becomes the time of the taking for the purpose of 28 U.S.C. § 2501."  *Starobin*, 229 Ct. Cl. at 72 (citing *Coakwell v. United States*, 178 Ct. Cl. 654 (1967)); *see Marsh v. Nichols, Shepard & Co.*, 128 U.S. 605, 612 (1888) ("Until the patent is issued there is no property right in it, that is, no such right as the inventor can enforce.").  Thus, to the extent the Government argues that use occurring before issuance of the '511 Patent defeats Plaintiff's claims, its argument must fail so long as Plaintiff properly demonstrates the Government's first post-issuance use occurred within the limitations period.  *See*

*Coakwell*, 178 Ct. Cl. at 659 (demonstrating the principle that, once a patent issues, accused articles that preexisted that patent may infringe the patent after its issuance).   The cases the Government cites are not inconsistent with this conclusion.  *See Amgen, Inc. v. Genetics Inst., Inc.*, 98 F.3d 1328, 1332 (Fed. Cir. 1996) ("[O]f course suit can not [sic] be brought for infringement of a patent that has not issued."); *Martin*, 99 Fed. Cl. at 632 (stating that § 1498 "does not grant the Court of Federal Claims jurisdiction over a claim for alleged infringement of an unissued patent").

      1.     <u>Aircraft Detection Claims</u>

      Although the parties do not dispute that some tolling is applicable to Plaintiff's aircraft detection claims, they disagree on what event properly triggered the tolling period.   The Government asserts that Plaintiff's aircraft detection claims are time-barred if they accrued before January 22, 2014.[4]  ECF No. 17 at 16.   It calculates this date by counting back six years from the filing date of Plaintiff's Complaint on April 17, 2020, and adding 85 days of tolling—the number of days between January 23, 2020, when Plaintiff submitted its § 1498(a) claim for compensation to the LOA, and the filing of its Complaint.  *Id.*  In its Amended Complaint, Plaintiff claims that 1,823 days should be added to the limitations period.  ECF No. 11 ¶ 62 (citing *Dow Chem. Co. v. United States*, 32 Fed. Cl. 11, 20–21 (1994)).  These 1,823 days represent the total time the LOA took to consider and then deny Plaintiff's § 183 claim for compensation.  *Id.* ¶ 61.  At the very least, Plaintiff argues it is entitled to 751 days of tolling based on its § 183 claim for compensation (which equals the number of days between June 16, 2011, the date the LOA learned of the issuance of the '511 Patent, and the LOA's July 5, 2013 letter denying his claim), plus 179 days of tolling based on its § 286 claim for compensation (which equals the number of days between the date the

---

[4] The Government notes that the critical date is not January 23, 2014, because 2020 was a leap year while 2014 was not.  ECF No. 17 at 16 n.7.

LOA received Mr. Geer's claim letter dated October 18, 2019, and the filing of the Complaint), for a total of 930 days.  ECF No. 18 at 14, 15–16.

> ### a.   Tolling Based on Plaintiff's 2008 § 183 Administrative Claim for Compensation

Plaintiff's Amended Complaint presents a novel tolling question: whether a § 183 claim for compensation may be used pursuant to § 286 to toll the statute of limitations as it relates to § 1498(a) claims.  The Court finds this argument is without merit.

First, § 183 and § 1498(a) provide fundamentally different causes of action.  Under § 183, a claimant may seek relief for damages caused by imposition of a secrecy order during the pendency of a patent application.  35 U.S.C. § 183 (2011).  Section 183 states in relevant part,

> An applicant . . . whose patent is withheld as herein provided, shall have the right, beginning at the date the applicant is notified that, except for such order, his application is otherwise in condition for allowance . . . and ending six years after a patent is issued thereon, to apply to the head of any department or agency who caused the order to be issued for compensation for *the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure*.  The right to compensation for use shall begin on the date of the first use of the invention by the Government.  The head of the department or agency is authorized, upon the presentation of a claim, to enter into an agreement with the applicant, his successors, assigns, or legal representatives, in full settlement for the damage and/or use. . . .   The owner of any patent issued upon an application that was subject to a secrecy order issued pursuant to section 181, who did not apply for compensation as above provided, shall have the right, after the date of issuance of such patent, to bring suit in the United States Court of Federal Claims for just compensation for the damage caused by reason of the order of secrecy and/or use by the Government of the invention resulting from his disclosure.  The right to compensation for use shall begin on the date of the first use of the invention by the Government.

*Id.* (emphasis added).  In other words, "Section 183 provides for damages to be paid to patent holders in two situations: when the Government wrongly uses the [now-]patented device during the period of secrecy, and when the secrecy order itself causes damages."  *McDonnell Douglas Corp. v. United States*, 229 Ct. Cl. 323, 333–34 (1982) (citation omitted)).  Additionally, § 183 provides two separate routes for obtaining compensation.  *Constant v. United States*, 223 Ct. Cl.

148, 153 (1980).   Under the first route, the claimant may seek compensation from the relevant department or agency head from the date the notice of allowability issues (here, August 16, 2001, *see* ECF No. 11 ¶¶ 37–38) until six years after issuance of the patent.   *AT&T Co. v. United States*, 231 Ct. Cl. 360, 363–64 (1982).   If relief is denied, the claimant may seek judicial review of its claim in this Court.   *Id.* at 363.   The second route allows the claimant direct access to the Court of Federal Claims if it foregoes the first route.   *Id.* at 363–64.   Plaintiff chose the first route by submitting its 2008 claim for compensation to the LOA.   *See* ECF No. 11 ¶¶ 56–57.   It did not seek judicial review of the LOA's denial, and any § 183 claim has since expired.   *See* ECF No. 11 ¶ 10; 35 U.S.C. § 183; 28 U.S.C. § 2501; *AT&T Co.*, 231 Ct. Cl. at 363.

Section 1498(a), on the other hand, provides a cause of action when the Government uses or manufactures a patented invention without authorization.   28 U.S.C. § 1498(a) (applying to use or manufacture of "an invention *described in and covered by a patent* of the United States" (emphasis added)).   Since Plaintiff brought its claims in the instant action under § 1498(a), its claims are limited to infringement occurring after issuance of the '511 Patent.   *See Marsh*, 128 U.S. at 612.   If the Court were to accept Plaintiff's tolling argument, however, it would add 1,057 days to the tolling calculation for a period *before* the patent was even issued.

Although Plaintiff argues § 286 does not explicitly require that the claims subject to litigation be identical to those contained in the administrative claim for compensation, applying § 286 to the relevant claims at issue in this case, as Plaintiff suggests, stretches the statutory language too far.   ECF No. 18 at 14–15.   First, the language of § 286 relates specifically to claims against the Government for use of a *patented* invention.   28 U.S.C. § 286.   As explained above, when Plaintiff filed its 2008 claim for compensation, it did so under § 183 because the claim pertained to damages arising from the secrecy orders imposed on Plaintiff's patent *application*, not use of

14

the then-nonexistent '511 Patent. *See* ECF No. 17-1 at 1. Simply put, Plaintiff's 2008 § 183 claim for compensation related to a cause of action fundamentally different from the § 1498(a) cause of action before the Court now. *Compare* 28 U.S.C. § 1498(a), *with* 35 U.S.C. § 183. The former, therefore, cannot be the relevant trigger of the tolling period for the latter.

Moreover, Plaintiff sat on its rights by not bringing suit under § 183. When Plaintiff was unable to reach a satisfactory settlement after submitting its 2008 administrative claim, it could have immediately sought judicial relief on that claim. *See* 35 U.S.C. § 183; *AT&T Co.*, 231 Ct. Cl. at 363. But it chose not to sue under § 183, instead letting that statute of limitations run and the cause of action expire. By attempting to use § 286 to extend the tolling period back to the denial of the 2008 claim for compensation, Plaintiff attempts to receive the benefit of a since-expired cause of action.[5] The strictures governing waiver of sovereign immunity are not so pliable. *See King*, 395 U.S. at 4.

Plaintiff's reliance on *Dow Chemical* is unpersuasive. *See* ECF No. 11 ¶ 62. In that case, the court held that the statute of limitations on the plaintiff's § 1498(a) claims were tolled from the date it submitted a written claim to the Government, for payment of royalties owed for the Government's alleged licensed use of the plaintiff's patented slurry pump injection system, until the date when the Government issued a final decision upholding its decision to deny the administrative claim. *Dow Chem.*, 32 Fed. Cl. at 20–21. *Dow Chemical* contains no reference to or discussion of § 286's relation to § 183, nor is its holding inconsistent with the Court's decision here. *See id.* Indeed, it tends to support the conclusion that a patent infringement action is tolled by a claim for compensation alleging infringement of the patent at issue (while it was in existence)

---

[5] Plaintiff, as the Government notes, has already received some remediation for the administrative exhaustion period related to its 2008 claim for compensation: a 1,826 day-for-day adjustment to the term of its patent. ECF No. 17 at 17 (citing 35 U.S.C. § 154(b) (2013)).

and that recovery is limited to "any infringement claims that accrued during the life of [the] patent." *Id.* at 21.   Reading *Dow Chemical* as Plaintiff presumably suggests would contradict precedent consistently limiting property rights in a patent exclusively to the post-issuance period. *See Marsh*, 128 U.S. at 612; *Amgen*, 98 F.3d at 1332.

Plaintiff's argument that the Government utilized the full benefit of § 286's tolling provision without affording Plaintiff the same benefit is equally unavailing.   ECF No. 18 at 15. The scope of the Government's waiver of sovereign immunity in patent infringement suits is delineated by § 286 and § 2501.   *See Unitrac*, 113 Fed. Cl. at 164.   Equitable arguments such as the one Plaintiff raises are inapplicable. *See John R. Sand & Gravel Co.*, 552 U.S. at 136 (equitable tolling does not apply under § 2501).

### b. Tolling Based on Plaintiff's 2019 § 1498(a) Administrative Claim for Compensation

Unlike the 2008 claim for compensation, there is no dispute that Plaintiff's claim for compensation first submitted to the LOA in October 2019 qualifies as a "claim" under § 286 vis-à-vis Plaintiff's § 1498(a) claims alleging infringement of the '511 Patent.   The parties, however, disagree as to the date from which tolling began.   Plaintiff asserts that the limitations period is tolled from the date LOA received his claim notice on October 22, 2019, while the Government argues that January 23, 2020, the date Plaintiff perfected his claim pursuant to the applicable procedures, is the proper date for calculating the tolling period.[6]   ECF No. 18 at 14; ECF No. 17 at 16.

---

[6] The copy of Plaintiff's claim letter dated October 18, 2019, contained in the appendix indicates it was received by the LOA on October 29, 2019, not October 22, 2019, as Plaintiff alleges.   ECF No. 17-1 at 14.   Regardless, since Plaintiff is only entitled to tolling as of the January 23, 2020 date of compliance with the DFARS, the issue is immaterial.

The Air Force follows the DFARS's definition of a claim for compensation, a definition the court has previously found controlling. *See Unitrac*, 113 Fed. Cl. at 164. Specifically, DFARS 227.7004 requires that a claim for compensation include the following information:

(1) An allegation of infringement;

(2) A request for compensation, either expressed or implied;

(3) A citation of the patent or patents alleged to be infringed;

(4) A sufficient designation of the alleged infringing item or process to permit identification, giving the military or commercial designation, if known, to the claimant;

(5) A designation of at least one claim of each patent alleged to be infringed; or

(6) As an alternative to (a)(4) and (5) of this section, a declaration that the claimant has made a bona fide attempt to determine the item or process which is alleged to infringe, but was unable to do so, giving reasons, and stating a reasonable basis for his belief that his patent or patents are being infringed.

DFARS 227.7004(a). Subpart 227.7004(b) provides a list of additional information considered "generally necessary" and which "[c]laimants are encouraged to furnish . . . at the time of filing a claim." DFARS 227.7004(b).

According to the LOA, Mr. Geer's October 18, 2019 letter failed to properly designate the alleged infringing processes or instrumentalities as required by DFARS 227.7004(a)(4), nor did he, in the alternative, file a declaration under Subpart 227.7004(a)(6). *See* ECF No. 17-1 at 14–15, 41. When asked to identify the Air Force's infringement, Mr. Geer responded by describing the process detailed in the '511 Patent. *See id.* at 43. He then alleged that "the Government has systems that work in accordance with these examples within the [Air Force] and potentially other agencies (e.g., NORAD, the Defense Intelligence Agency, or the Central Intelligence Agency)." *Id.* Ultimately, the LOA determined his original submission was insufficient to constitute a claim under DFARS and concluded that a claim for compensation was not properly filed until Mr. Geer

17

submitted the January 23, 2020 declaration pursuant to Subpart 227.7004(a)(6). *Id.* at 47–48, 63; *see id.* at 51–53.

Plaintiff sees things differently, arguing "[t]here is no requirement in the statute that the agency have actual notice of the [patent] infringement claim or that any specific office within the agency must receive the written claim for compensation." ECF No. 18 at 13 (quoting *Leonardo v. United States*, 55 Fed. Cl. 344, 352 (2003)). In reply, the Government emphasizes that DFARS 227.70 is controlling, and even were that not the case, Plaintiff has not met the minimum requirements for establishing a claim for compensation as described in *Filler v. United States*, 148 Fed. Cl. 123 (2020). ECF No. 19 at 9–10; *see Filler*, 148 Fed. Cl. at 142 (requiring "a written claim notifying the correct agency . . . of the underlying facts of a claim against the government[] and [stating] a sum certain for damages" where the agency did not have a regulation defining an administrative claim procedure (citing *Leonardo*, 55 Fed. Cl. at 352–53)).

The weight of authority supports the Government's argument. This court has repeatedly relied on agency regulations to determine whether a claimant properly filed a claim for compensation. *See Pratt & Whitney Can., Inc. v. United States*, 17 Cl. Ct. 777, 790 (1989) (recognizing that the plaintiff's letters fulfilled the requirements of an administrative claim through compliance with Army and Navy regulations); *Motorola, Inc. v. United States*, 13 Cl. Ct. 420, 428 (1987) (citing the applicable regulations as requiring a request for compensation and a designation of at least one claim of each allegedly infringed patent). DFARS's claim requirements were directly at issue in *Unitrac*. The *Unitrac* court acknowledged that the plaintiff's first informal contact with DoD regarding the patent infringement claims had technically satisfied § 286's writing requirement but held that tolling was available only from the date the plaintiff formally requested that its written submissions be considered as a DFARS claim. 113 Fed. Cl. at 164

(concluding that DFARS 227.70, § 2501, and § 286 "constitute[d] the scope of the Government's waiver of sovereign immunity" under § 1498).

Even *Leonardo*, which Plaintiff relies on, supports the Government's argument. *See* 55 Fed. Cl. at 352; ECF No. 18 at 13. There, in the context of a copyright claim under § 1498(b), the court first looked to the language of the statute to determine whether it required that a claim for compensation provide the relevant agency with actual notice of copyright infringement. *Leonardo*, 55 Fed. Cl. at 352. *Leonardo* then looked to see whether DOJ and State Department regulations provided those agencies' interpretations of the term. *Id.* After it determined that the agencies had not interpreted the meaning of a claim for compensation or defined claim procedures, it relied on the plain language of § 1498(b) to conclude that the plaintiff's claim provided sufficient notice to toll the statute of limitations. *Id.*; *see Filler*, 148 Fed. Cl. at 133, 142–43.

The Court finds these authorities persuasive and determines that since Plaintiff did not comply with the DFARS until January 23, 2020, that is the appropriate date to begin tolling its aircraft detection claims. Plaintiff is therefore entitled to 85 days of tolling on those claims. It is therefore not necessary to address Defendant's alternative *Filler* argument.

### c.   Secret Use

Citing *de Graffenried v. United States*, 25 Cl. Ct. 209, 213 (1992), Plaintiff also argues that the accrual date as to its aircraft detection claims should be suspended due to the Government's alleged secret use of the '511 Patent. ECF No. 18 at 16–17; ECF No. 11 ¶¶ 64–65. To successfully demonstrate that the Government has concealed its usage of an accused device, Plaintiff bears the burden of showing either that "defendant has concealed its acts with the result that plaintiff was unaware of their existence" or "its injury was 'inherently unknowable' at the accrual date." *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct. Cl. 630, 634 (1967) (footnote

omitted) (quoting *Urie v. Thompson*, 337 U.S. 163, 169 (1949)). "A mere lack of knowledge of the existence of facts which [may] constitute a cause of action," coupled with speculation that future discovery may ultimately reveal evidence of secret use, does not satisfy Plaintiff's burden. *Custer v. United States*, 224 Ct. Cl. 140, 147–48 (1980).

The Amended Complaint alleges secret use in two paragraphs. *See* ECF No. 11 ¶¶ 64–65. Paragraph 64 recites the legal standard laid out in *Japanese War Notes*, while paragraph 65 asserts in conclusory fashion that "[a]t least some of the Government's use of inventions claimed in the '511 patent has been secret, including without limitation the Government's use of inventions claimed in the '511 patent in technology for detecting stealth aircraft." *Id.* ¶ 65. In its Opposition, Plaintiff further argues that the Government has not disputed its secret use allegations or pointed to any documents indicating that Plaintiff should have been aware of the Government's alleged infringing actions. ECF No. 18 at 16. On that basis, Plaintiff claims that discovery into the relevant facts is necessary. *Id.* The Government correctly argues that Plaintiff's conclusory allegations, without any factual allegations or supporting evidence, fail to sufficiently plead an accrual suspension claim based on secret use. ECF No. 19 at 11–12. As noted, paragraph 64 provides no factual allegations, merely stating the legal standard, and paragraph 65 is a quintessential example of a conclusory statement, lacking the "well-pleaded facts" required to avoid dismissal. *Iqbal*, 556 U.S. at 679.

Plaintiff's reliance on *de Graffenreid* is also unconvincing. In that case, the parties presented sufficient evidence for the court to infer that the Government deliberately concealed material facts from the plaintiff regarding use of guided boring devices at an Army arsenal. *de Graffenried*, 25 Cl. Ct. at 213. For example, the plaintiff demonstrated that the Government made false representations and deliberately prevented the plaintiff from entering the facility where

infringing devices were in use. *Id.* at 213–14. Although Plaintiff focuses on the fact that the plaintiff in *de Graffenried* supported its allegations of secret use with information obtained during discovery and suggests the same be allowed here, that argument ignores the fundamental principles of the pleading standard, which requires that a plaintiff demonstrate more than bare allegations of secret use devoid of supporting facts before it may proceed to conduct discovery. *See Twombly*, 550 U.S. at 558 (explaining that the plausibility standard ensures that "a largely groundless claim" does not unnecessarily "tak[e] up the time of a number of other people" through costly and protracted litigation, including discovery) (citation omitted)); *see also Japanese War Notes*, 178 Ct. Cl. at 631, 634–35; *Custer*, 224 Ct. Cl. at 147–48.

Moreover, Plaintiff misconstrues the standard articulated in *Japanese War Notes*. *See* ECF No. 18 at 16. Despite Plaintiff's assertions, the burden of sufficiently alleging secret use falls upon Plaintiff. *Japanese War Notes*, 178 Ct. Cl. at 634. The extent to which the Government disputes or provides documents contradicting Plaintiff's allegations is irrelevant where Plaintiff bears the burden of demonstrating jurisdiction in the first instance. *See id.* Consequently, Plaintiff's secret use allegations are insufficiently pled and thus do not support tolling for its aircraft detection claims.

### d. *Plaintiff's Aircraft Detection Claims Are Without Jurisdiction*

In its Amended Complaint and attached claim chart, Plaintiff identifies one accused device produced by the MITRE Corporation and described in a 2005 article. *See, e.g.*, Aircraft Detection Claims Chart at 7–11, 14–25, ECF No. 11-2. To support jurisdiction, however, Plaintiff must sufficiently plead facts showing that the Government's first use of the MITRE technology following issuance of the '511 Patent occurred sometime after January 22, 2014. *See Starobin*, 229 Ct. Cl. at 72. Nothing in the article, written long before issuance of the '511 Patent, provides

facts supporting first accrual after 2014. *See* ECF No. 11-2 at 14–25. The Amended Complaint and claim chart are equally unsupportive, identifying no other accused devices and alleging no facts supporting claim accrual within the limitations period. *See* ECF No. 11 ¶ 90; ECF No. 11-2 at 2–12. Plaintiff's remaining exhibits only describe the MITRE Corporation and the process by which stealth aircraft reduce heat signatures. *See* ECF No. 11-2 at 27–30, 32–37.

In its Opposition, however, Plaintiff (for the first time) directs the Court's attention to four articles discovered after filing its Amended Complaint. *See* ECF No. 18 at 23–24. The first two, 2020 articles published by *Defense World* and the *Teller Report*, detail claims that Russian researchers have found a means of detecting stealth aircraft. App. to Pl.'s Resp. in Opp'n to Def.'s Partial Mot. to Dismiss at 7, 8–11, ECF No. 18-1. The second pair of articles, both published in 2012, *id.* at 12–13, 14–17, discuss the Government's previous desire for missile identifying technology that uses "UV sensor[s] [that] work[] by looking for non-reflective shadows against the bright UV glare of the sky—like silhouettes against a lightboard," *id.* at 13. Because the Government has acknowledged this technology existed or could potentially be developed, Plaintiff reasons that discovery will show that it has used it within the relevant period. ECF No. 18 at 24–25.

As the Government notes, these exhibits are outside of the pleading and thus cannot be considered on a Rule 12(b) motion. ECF No. 19 at 15–16; *Am. Contractors Indem. Co. v. United States*, 570 F.3d 1373, 1376 (Fed. Cir. 2009). Regardless, these exhibits provide no additional jurisdictional support. The 2012 articles, like the 2005 MITRE Corporation article, were published outside the limitations period and discuss only the Government's aspiration to develop UV cloaking for stealth aircraft. They do not identify any accused device or demonstrate that the Government ever obtained this technology. *See* ECF No. 18-1 at 12–17. Furthermore, they

contain no information suggesting Government use after January 22, 2014. *See id.* As for the 2020 articles, discussions of Russian stealth detection technology do nothing to identify or describe the United States Government's alleged infringement of the '511 Patent, *see id.* at 7–11, despite Plaintiff's assertion that "if Russian researchers have developed such technologies, it is reasonable to infer that the United States is also currently employing such technology," ECF No. 18 at 24. Though obligated to "draw all reasonable inferences in plaintiff's favor," the Court has no obligation to accept speculation as well-pled fact. *Henke*, 60 F.3d at 797. Consequently, Plaintiff has not provided "relevant, competent evidence" demonstrating that its aircraft detection claims first accrued within six years, plus 85 days, of it filing this suit. *Hornback*, 52 Fed. Cl. at 377. Accordingly, the Court lacks jurisdiction over those claims.

2.      Passive Detection Claims

Plaintiff pled its passive claims in the initial Complaint. *See* ECF No. 1 ¶ 53. Accordingly, without tolling, the date for determining whether the claims are within the statute of limitations, and thus the Court's jurisdiction, is April 17, 2014. *See* 28 U.S.C. § 2501.

Section 286 tolls the statute of limitations only for the period between the filing of a written claim for compensation received by the relevant government agency and the date of the agency's denial of the claim. 35 U.S.C. § 286. Here, Plaintiff's passive detection allegations relate to the following relevant agencies: TSA, Air Force, Army, CBP, and INL. ECF No. 11 ¶¶ 91–96; ECF No. 11-3 at 4–6. Yet, with the exception of the Air Force, Plaintiff's Amended Complaint does not properly allege that it submitted a claim for compensation to any of these agencies. Plaintiff argued at the hearing on this Motion that submitting a claim to the Air Force operated as a blanket claim against all alleged infringing agencies. Such argument ignores the plain text of § 286, which conditions tolling on a claimant submitting a claim to the "department or agency of the

Government *having authority to settle*" that claim.  35 U.S.C. § 286 (emphasis added).  Plaintiff has provided no case law or authority supporting the position that the Air Force has such authority with respect to claims against the other relevant agencies.  Even Plaintiff's claim for compensation submitted to the Air Force, however, does not trigger tolling since it only discussed aircraft detection technology and made no allegations of infringement as to passive wave or passive terahertz detection.  *See* ECF No. 17-1 at 49–62; DFARS 227.7004(a)(1); *see also Starobin*, 229 Ct. Cl. at 71–72 (describing accrual as it pertains to each individually infringing device, not a class of infringing devices).  Consequently, tolling is unavailable for Plaintiff's passive detection claims.

With the proper limitations period in mind (*i.e.*, the six-year period commencing on April 17, 2014), the Court finds that it has jurisdiction over several of Plaintiff's passive detection claims. First, Plaintiff identified in its Complaint two post-2014 TSA contracts with Thruvision occurring within the relevant limitations period.  *See* ECF No. 11 ¶ 92; TSA Contracts for Thruvision Tech. at 2–7, ECF No. 11-5.  The Government concedes that these contracts support claims accruing during the limitations period and are within the Court's jurisdiction.  ECF No. 17 at 22.  The Court agrees: both contracts, initiated in 2018, support the Court's jurisdiction.  *See* ECF No. 11-5 at 2, 5.  Furthermore, a 2018 article describing the TSA's reported use of body scanners within the Los Angeles transit system and New York City's Penn Station supports the Court's jurisdiction over those claims against TSA.  *See* ECF No. 11-3 at 19–20.  Next, Plaintiff provides a 2015 PowerPoint, which appears to be a sales presentation created by a Turkish company featuring Thruvision passive terahertz screening technology.  *See* 2015 Thruvision PowerPoint at 2, ECF No. 11-4; *see also* Pl.'s Notice of Suppl. Authority, ECF No. 24.  The PowerPoint identifies both the Air Force and Army as then-current users of Thruvision technology.  ECF No. 11-4 at 13, 15.

The Court finds this sufficient to support jurisdiction at the pleadings stage over Plaintiff's Thruvision claims against the Air Force and Army.[7]

Other passive detection allegations do not support jurisdiction. Plaintiff cites two 2008 Homeland Security publications describing testing of passive wave detection systems by TSA and the Space and Naval Warfare Systems Center ("SNWSC"). *See* ECF No. 11-3 at 9–10, 12. The article regarding TSA does not support jurisdiction as it discusses only a period that precedes patent issuance, *see id.* at 9–10; but, as discussed, Plaintiff has alleged facts demonstrating the Court's jurisdiction over claims regarding TSA's post-2014 use of Thruvision passive detection products. Plaintiff presents no further allegations regarding the SNWSC's use of this technology, leaving the Court without any facts from which to conclude that Plaintiff has demonstrated a claim accruing after issuance of the '511 Patent. *See id.* at 12. Finally, Plaintiff provides a 2010 contract between the Air Force and Thruvision. *See* Air Force Contract for Thruvision Tech. at 2, ECF No. 11-7; App. to Def.'s Mot. to Dismiss Pl.'s Compl. at 136–70, ECF No. 9-1.[8] However, since that

---

[7] Defendant claims that nothing in Plaintiff's claim chart on this theory provides sufficient information to determine when and whether the Air Force or Army procured the alleged technology. ECF No. 17 at 22. Whether Plaintiff can actually prove jurisdiction on these claims, as it must at the merits stage, is a question for a later date. Although the 2015 PowerPoint alone may not be sufficient to ultimately prove Plaintiff's claims against the Air Force and Army, it is sufficient to demonstrate jurisdiction at this early pleading stage. *See Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 121 n.1 (2d Cir. 1998) ("In a close case, the factual basis for a court's subject matter jurisdiction may remain an issue through trial, and, if and when doubts are resolved against jurisdiction, warrant dismissal at that time."); *see also In re Vivendi Universal, S.A.*, No. 02 Civ. 5571 (RJH), 2004 WL 2375830, at *7 (S.D.N.Y. Oct. 22, 2004) (a court may reexamine subject-matter jurisdiction at a later stage of litigation should the facts relied on to establish jurisdiction at the early stage prove unsupportive).

[8] The Government originally attached a 259-page appendix to its first Motion to Dismiss. *See* ECF No. 9-1. It cites to and incorporates this appendix in the instant Partial Motion to Dismiss without re-appending it. *See* ECF No. 17.

contract concluded before issuance of the '511 Patent, it does not support accrual of an independent claim during the limitations period.  *See* ECF No. 11-7 at 2.

> 3.   <u>Autonomous Vehicle and Vehicle Collision Detection Claims</u>

For the same reasons, Plaintiff's autonomous vehicle claim is barred by the statute of limitations.  Its vehicle collision detection claim, however, is not time-barred.  Plaintiff included these claims for the first time in its Amended Complaint, filed July 7, 2020.  *See* ECF No. 11 ¶¶ 97–103.  Like the passive detection claims, Plaintiff has not alleged that it previously submitted a claim for compensation related to its autonomous vehicle and vehicle collision detection claims to the relevant agencies having authority to settle those claims—*i.e.*, the State Department, Federal Bureau of Investigation ("FBI"), Secret Service, and Department of Veterans Affairs.  *See* 35 U.S.C. § 286; ECF No. 11 ¶¶ 100–02.  As such, no tolling applies, and Plaintiff must sufficiently allege that any infringement from autonomous vehicles and vehicle collision detection systems accrued on or after July 7, 2014.  *See* 28 U.S.C. § 2501.

To support its autonomous vehicle claim, Plaintiff alleges that the Government has deployed the so-called MIDARS robot, "a four-wheeled robot outfitted with several cameras [and] radar . . . that automatically performs random and preprogrammed patrols" on military bases and other government installations.  Autonomous Vehicles Claim Chart at 13, ECF No. 11-9.  Plaintiff cites a Wikipedia page titled "Military robot," which identifies MIDARS as being "[i]n development," as well as a host of other news articles written within the limitations period.  *Id.*  The Court concludes that these materials do not sufficiently demonstrate the Court's jurisdiction over Plaintiff's MIDARS claim.

First, based on the Court's review of the page's edit history, it appears the discussion of the MIDARS robot contained in the "Military robot" Wikipedia page cited by Plaintiff has existed

in nearly identical form on that page since at least 2005, long before issuance of the '511 Patent.[9]
The identical discussion was also contained in a 2012 edited version of the page.[10]  Assuming the
accuracy of the information, the Wikipedia page relied on by Plaintiff does not support jurisdiction
as the prior versions of the page demonstrate that the MIDARS robot was in the development stage
between issuance of the '511 Patent and the commencement of the limitations period.  *See id.*

Plaintiff's remaining exhibits, though published during the limitations period, likewise
support a finding that any claim accrued, if at all, before the limitations period.  An article
published in 2017 describes the MIDARS robot as being introduced "[e]arlier" than 2009 and
merely restates, verbatim, the information existing in the Wikipedia article since at least 2012. *See
id.* at 49.  A second 2017 article discussing "breakthroughs in artificial intelligence" refers to
MIDARS as one of a number of military "projects" arising "in the past *several* years," but does
not specify any dates or suggest the then-current status of any project. *Id.* at 35 (emphasis added).
It also describes the functions of MIDARS in similar language that paraphrases the Wikipedia
page.  *See id.*  Likewise, a 2019 article states that the U.S. Government is "working on MIDARS"
but only cites to the Wikipedia page as support for its claim without providing any additional
information not contained on that page.  *Id.* at 54.  None of these articles show when MIDARS
was first used or manufactured or that it is currently being used or manufactured, only that it has
been considered "in development" before, during, and after the 2014 limitations period.  And while
the articles themselves may have been written within the limitations period, the facts upon which
they rely have preexisted that period in identical form.  Thus, assuming that the alleged

---

[9]  *See* Military robot, https://en.wikipedia.org/w/index.php?title=Military_robot&oldid=
23685250 (as of Sept. 21, 2005, 5:13 P.M.).

[10]  *See* Military robot, https://en.wikipedia.org/w/index.php?title=Military_robot&oldid
=476404679 (as of Feb. 12, 2012, 5:59 A.M.).

"development" of MIDARS involves performing the method covered by the '511 Patent (and the Government does not challenge this point), Plaintiff's exhibits support a claim accrual date occurring pre-2014 since it was allegedly introduced and in development before 2009 and has continued to be in development until present. *Id.* at 49.

The remaining exhibits only discuss the technology that MIDARS allegedly relies on to function; they do not discuss MIDARS, let alone the Government's use of MIDARS. *See id.* at 61–66, 68–72, 74–75, 77–89, 91–92, 94–113. Taken together, Plaintiff has not presented facts showing the Government's alleged use of autonomous vehicle technology after issuance of the '511 Patent first accrued after July 7, 2014; thus, the Court lacks jurisdiction over Plaintiff's autonomous vehicle claims.

On the other hand, in support of Plaintiff's vehicle collision detection claims, it attaches to its Amended Complaint several government contracts for purchase, modification, and repair of alleged infringing vehicles performed during the limitations period. *See* State Dep't Contract for Armored Chevrolet Suburban, ECF No. 11-11 (contract starting in July 2018 and completed in November 2020); Dep't of Veterans Affairs Lease, ECF No. 11-12 (contract starting in May 2019 and completed in May 2020); FBI Contract for Modified Ford Police Explorers, ECF No. 11–13 (contract starting in September 2019 and completed in March 2020); Secret Service Contract to Repair 2018 Dodge Charger, ECF No. 11-14 (contract starting in March 2020 and completed in June 2020). These factual allegations are sufficient to satisfy the Court's jurisdiction.

\*     \*     \*

In sum, the Court finds that Plaintiff has not sufficiently pled facts demonstrating that its claims accrued during the relevant limitation periods for the following claims: its aircraft detection claims against the Air Force; its passive detection claims against the SNWSC and TSA based on

the 2008 publications, as well as those based on the 2010 Air Force contract; and its autonomous vehicle claims regarding MIDARS.   As such, these claims are time-barred and thus beyond the Court's jurisdiction.

**C.      Plaintiff's Passive Detection Claim Based on Thruvision Equipment Donated to Peru Is Precluded by 28 U.S.C. § 1498(c).**

The Government also contends that two procurements that Plaintiff identified in support of its passive detection claims—the State Department-Thruvision Contract No. 19PE50-19-C-0005 ("State Department Contract") for equipment donated to the Peruvian Government in 2019 and the CBP/INL-Thruvision procurement contained in Order No. 19AQMM-19-S-0232 ("CBP Call Order") for equipment donated to the Mexican Government in 2019—accrued outside the United States and, although not time-barred, are precluded by 28 U.S.C. § 1498(c).   ECF No. 17 at 19–20; ECF No. 19 at 12–13; *see* ECF No. 9-1 at 171–201; 238–47.   Plaintiff counters that "any extraterritoriality defense" has not been established, characterizing the Government's argument as premature.   ECF No. 18 at 19.

Section 1498(c) states that the provisions of § 1498 do not apply to claims arising in a foreign country.   28 U.S.C. § 1498(c); *Zoltek Corp. v. United States*, 672 F.3d 1309, 1326 (Fed. Cir. 2012); *Leonardo*, 55 Fed. Cl. at 354.   Contrary to Plaintiff's position, the extraterritorial provision of § 1498 is not an affirmative defense but rather defines the scope of the Court's jurisdiction.   *See Leonardo*, 55 Fed. Cl. at 353–54 (analyzing extraterritorial bar as jurisdictional question and explaining that the language of § 1498(c) is identical to the extraterritorial provision of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(k)); *Smith v. United States*, 507 U.S. 197, 204 (1993) (affirming dismissal of FTCA claim for lack of subject-matter jurisdiction because § 2680(k) did not extend the Government's waiver of sovereign immunity under the Act to claims arising in a foreign country).   Accordingly, if either of the contracts described above were

exclusively performed internationally, then the Court would lack jurisdiction over claims premised on those contracts.  Because the application of § 1498(c) is a jurisdictional issue, Plaintiff bears the burden.  *See Reynolds*, 846 F.2d at 748.

Applying that standard, the State Department Contract does not sufficiently demonstrate jurisdiction over Plaintiff's claim since it shows that use of the donated Thruvision equipment was to occur entirely in Peru.   The contract stated that Thruvision agreed to "provide Screening Equipment and technical support for the [INL] Ports and Customs program in Lima."  ECF No. 9-1 at 174.  It listed the "American Embassy Lima" as paying for and receiving delivery of the accused devices. *Id.* at 171.  The "U.S. Embassy Lima" was also listed in the Federal Procurement Data System—Next Generation as the Contracting Office.  State Dep't Contract for Thruvision Tech. at 2, ECF No. 11-6.  The documentation related to the State Department Contract directed delivery to Lima, with Peru identified as the "principal place of performance."  *Id.* at 3; *see* ECF No. 9-1 at 177.  As such, Plaintiff's claim regarding the State Department Contract is dismissed as extraterritorial.[11]

---

[11] The Government argues in passing that, to the extent Plaintiff asserts its claim accrued where Thruvision manufactured the equipment, jurisdiction is still lacking because the contracts at issue do not demonstrate the Government's authorization and consent. ECF No. 17 at 20 n.8; *see Hughes Aircraft Co. v. United States*, 534 F.2d 889, 898 (Ct. Cl. 1976) (government liability under § 1498(a) for third-party infringement arises "upon a showing that (1) the accused use or manufacture was undertaken for the Government, i.e., for the Government's benefit; and (2) the Government gave its authorization or consent for the accused use or manufacture" (emphasis omitted)).   The Amended Complaint does not allege, and the Court finds no evidence in the contracting documents attached to the pleadings, that the Government authorized or consented, explicitly or implicitly, to the alleged infringement of the '511 Patent through the manufacturing of the donated Thruvision equipment.  *See Amos v. United States*, No. 16-1094C, 2017 WL 946302, at *3 (Fed. Cl. Mar. 10, 2017) ("The mere existence of a contract . . . is not enough to establish that authorization or consent was granted, but rather, a plaintiff must show that the Defendant authorized the infringement . . . before immunity is waived."); *Sheridan v. United States*, 120 Fed. Cl. 127, 132 (2015), *aff'd*, 629 F. App'x 948 (Fed. Cir. 2015) (a plaintiff must allege "facts that show the Government's intention to accept liability for a specific act of claimed

In contrast, the CBP Call Order provides sufficient factual support to demonstrate the Court's jurisdiction over Plaintiff's passive detection claim premised on the use of the accused devices donated to the Mexican Government.  Although the CBP Call Order identified the "American Embassy Mexico" as the requisitioning office, ECF No. 9-1 at 238, and stated that CBP was acquiring and donating the Thruvision equipment to "assist the Mexican INL in curtailing . . . . increasing violence," *id.* at 240, the Order clearly described the place of performance as Mexico *and* the United States, *id.* at 241.  It further instructed Thruvision to make final delivery to the INL's warehouse in Laredo, Texas, where Thruvision was to "install . . . and integrate [the accused devices] into the existing SAT [Mexican Tax Administration Service] *and CBP screening Land Ports of Entry*" and to "provide training to SAT and CBP personnel at Three (3) different locations in Mexico *and the US*."  *Id.* (emphasis added).

The Court finds that Plaintiff's passive detection claim based on the CBP Call Order is not barred by § 1498(c).  Although the donation letter to the Mexican Government suggests the Thruvision equipment reached Mexico, it does not contradict the facts supporting an allegation that CBP used the accused devices within the United States.  *Id.* at 249–52.  Since the Government provides no other jurisdictional challenges to the CBP Call Order, the Government's Motion is denied as to those claims.

---

infringement").  Moreover, even if Plaintiff had sufficiently pled an authorization-and-consent claim, it contends, at most, that the accused equipment, although used outside the United States, "*might* have been manufactured in the United States."  ECF No. 18 at 19 (emphasis added).  It, however, provides no further argument or factual support that would give plausibility to such claim.  *See Twombly*, 550 U.S. at 557–58.

**D.      Some, But Not All, of the Remaining Claims Should Be Dismissed Under RCFC 12(b)(6).**

For Plaintiff's remaining claims to survive dismissal under RCFC 12(b)(6), Plaintiff's pleadings must "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (internal quotation marks omitted) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). The parties disagree, however, as to the appropriate level of factual detail required to plead a claim of patent infringement. Relying on the Federal Circuit's decision in *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277 (Fed. Cir. 2013), and the decision in *3rd Eye Surveillance, LLC v. United States*, 124 Fed. Cl. 438 (2015), Plaintiff contends that identifying an accused device by name or product number is not required. ECF No. 18 at 20. Rather, according to Plaintiff, all that is needed to plead a claim of infringement is sufficient information to provide notice to the accused infringer and to "raise a reasonable expectation that discovery will reveal evidence" of infringement. *Id.* at 21 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 556). Under this standard, Plaintiff argues that its claim charts sufficiently describe the infringing technologies to provide notice even if those technologies are unnamed. *Id.* The Government concedes that the Federal Circuit has established a "notice and plausibility" standard that requires a context-specific analysis of a plaintiff's allegations but disputes that Plaintiff has met that standard here, except as to the TSA's post-2014 procurements of Thruvision equipment. ECF No. 19 at 14–15. Citing *Artrip v. Ball Corporation*, 735 F. App'x 708 (Fed. Cir. 2018), and *Geospatial Technology Associates, LLC v. United States*, No. 16-346C, 2020 WL 4436332 (Fed. Cl. May 21, 2020), it contends that the pleading standard requires Plaintiff at least to identify how and when an infringement occurred, not just allege infringement against unidentified devices sharing similar functions. *Id.*

32

1.    Pleading Standard for Infringement Claims

*K-Tech* and *3rd Eye Surveillance* are generally supportive of Plaintiff's contention that it need not name or identify by product number an accused device. *See* ECF No. 18 at 20–21. In *K-Tech*, the Federal Circuit held that adequately identifying an accused device did not require naming or providing a model number for the product where the defendants operated in secrecy.[12] 714 F.3d at 1286. Instead, "provid[ing] sufficient information about a specific method of digital television broadcast to put the defendants [(Time Warner Cable and DirecTV)] on notice of the infringing activity" met the pleading standard where the plaintiffs, through pre-suit examination and discussion, had conclusively determined that the defendants were infringing their patent related to systems and methods for identifying a television program. *3rd Eye Surveillance*, 124 Fed. Cl. at 443 (discussing *K-Tech*'s holding). In contrast, the court in *3rd Eye Surveillance* determined that the plaintiffs failed to support their claim of infringement where the complaint alleged only that United States military and law enforcement agencies used "surveillance systems" infringing their patents related to security alarm systems using real-time video. *Id.* In a world where the Government uses a wide variety of surveillance systems, *3rd Eye Surveillance* held that the plaintiffs' description was insufficient to provide notice to the Government of its allegations of infringement.[13] *Id.*

---

[12] Of note, the Federal Circuit decided *K-Tech* in the context of Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure ("Form 18"). *See* 714 F.3d at 1283–84. Compliance with that form "effectively immunize[d] a claimant from attack regarding the sufficiency of the pleading." *Id.* at 1283; *see Lifetime Indus., Inc., v. Trim-Lok, Inc.*, 869 F.3d 1372, 1377 (Fed. Cir. 2017). The Supreme Court has since abrogated Form 18. *Lifetime Indus.*, 869 F.3d at 1377 (citation omitted). The Federal Circuit, however, has not recognized a distinction between the pleading standard of Form 18 and *Iqbal/Twombly*. *Id.*

[13] Because counsel had acknowledged using a variety of public documents to determine that the Government was infringing the patents at issue but had not provided that information with the plaintiffs' complaint, the court denied the Government's motion to dismiss for failure to state

Recent Federal Circuit decisions further illustrate the level of specificity required to plead patent infringement.  In *Bot M8 LLC v. Sony Corporation of America*, which was decided after briefing on the instant Motion, the Federal Circuit held that "[a] plaintiff is not required to plead infringement on an element-by-element basis."  4 F.4th 1342, 1352 (Fed. Cir. 2021).  "[R]eciting the claim elements and merely concluding that the accused product has those elements," however, will not do; factual allegations suggesting plausibility are required.  *Id.* at 1353 (upholding dismissal of infringement claims relating to one patent where the allegations were inconsistent with infringement and as to another patent where the allegations merely tracked the claim language, but reversing dismissal as to two other patents where the plaintiff provided "specific evidence" supporting infringement).  As the Court explained, plausibility is not static but depends on factors such as the "complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."  *Id.*

In *Disc Disease Solutions*, despite the plaintiff only alleging that the accused devices met "each and every element of at least one claim" of the relevant patents, the Federal Circuit determined that identifying and naming the three accused devices, including attaching photos of the devices, provided fair notice of infringement (even with minimal factual allegations as to the patents' claims), due to the simplicity of the technology at issue.  888 F.3d at 1260.

In *Artrip*, the plaintiff's third amended complaint alleged that the defendant infringed the patents at issue "by use of one or more of the machines at least at [one specific manufacturing plant]," but it failed to identify the accused devices, only stating that they were systems for "forming and attaching lift-tabs to can ends."  735 F. App'x at 714 (internal quotation marks

---

a claim, granted its motion for a more definite statement, and allowed the plaintiffs to file an amended complaint. *3rd Eye Surveillance*, 124 Fed. Cl. at 443–44.

omitted).   The Federal Circuit held that describing an accused device with "broad functional language" was insufficient to plead infringement.  *Id.* at 715.

Combined, these cases illustrate that to survive dismissal Plaintiff's pleading must identify the accused device thoroughly enough to provide Defendant "notice as to what [it] must defend," *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007), whether by describing the accused device in sufficient detail or by specifically identifying the device by name or appearance. *K-Tech*, 714 F.3d at 1286–87; *Disc Disease Sols.*, 888 F.3d at 1260.   Merely describing the function of the patent and alleging that Defendant is using a device that performs identical functions is insufficient.  *See Artrip*, 735 F. App'x at 714–15.  Once the plaintiff identifies an accused device, it need not plead an infringement claim element by element.  *Bot M8*, 4 F.4th at 1352.   But facts demonstrating how, when, where, and why an infringement has occurred satisfactorily provide notice of infringement.  *See Lifetime Indus. Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).

Because the Court has determined that Plaintiff's aircraft detection and autonomous vehicle claims should be dismissed for lack of jurisdiction, it is left to determine whether the surviving passive detection and vehicle collision detection claims meet the pleading standard described above.

2.    Passive Detection Claims

First, the Court looks to the remaining allegations contained in Plaintiff's claim chart.  The claim chart describes the passive detection technology encapsulated within the '511 Patent in detail and references a number of articles that describe agency use of similar technology.  *See* ECF No. 11-3 at 2–6.  Although Plaintiff has described in detail the process by which its technology operates and has, in some cases, provided allegations of where the alleged infringing technology has been

35

used, its claim chart does not identify any specific technology itself, only making reference to Thruvision as a producer of infringing technologies. *See id.* at 3–4; *Artrip*, 735 F. App'x at 714. This is not sufficient, and thus, to adequately plead its claim, Plaintiff's exhibits to the claim chart must provide a sufficient factual basis.

Plaintiff alleges that several Government agencies violated claim 16 of the '511 Patent through the procurement of Thruvision passive detection equipment, citing five contracts with Thruvision. The Government concedes that two TSA contracts for procurement of Thruvision equipment sufficiently plead claims of infringement. *See, e.g.*, ECF No. 17 at 7, 24; ECF No. 19 at 6, 13. Likewise, the CBP Call Order for Thruvision equipment donated to Mexico has been deemed within the Court's jurisdiction, and the Government makes no challenge under RCFC 12(b)(6) as to it. *See* ECF No. 17 at 19–20. All that remains to discuss is the 2018 article describing the TSA's use of body scanners within the LA transit system and New York's Penn Station and the Thruvision PowerPoint Plaintiff cites in support of its claim that the Army and Air Force were, at the time the presentation was created in 2015, currently using infringing Thruvision technology. *See* ECF No. 11-3 at 19–20; ECF No. 11-4 at 15.

The 2018 article discussing the TSA's use of body scanners provides sufficient factual support to adequately plead a claim. Although it does not identify an accused instrumentality by name or number, it contains sufficient information for the Government to know what it must defend. *See McZeal*, 501 F.3d at 1357. It describes the infringing technology in some level of detail. ECF No. 11-3 at 20 ("The device, known as 'passive terahertz screening,' . . . [is a] clunky 50-pound, computer-like device [that] screens passengers' outlines and reveals any concealed [items]."). It identifies the maker of the device—*i.e.*, "Thruvision Americas." *Id.* And it specifically states when and where TSA used the technology. These facts satisfactorily provide

facial plausibility to Plaintiff's claim and sufficient notice of infringement to the Government. *See Lifetime Indus.*, 869 F.3d at 1379; *Bot M8*, 4 F.4th at 1352.

The remaining passive detection claims relate to the Air Force's and Army's alleged use of Thruvision technology. In support of this allegation, Plaintiff attached to the Amended Complaint a Thruvision PowerPoint identifying the Air Force and Army as then-"current users" of Thruvision's concealed object detection system. *See* ECF No. 11-4 at 15. Although a close call, the Court finds that Plaintiff has sufficiently pled facts to state a claim. Purportedly published in 2015, the PowerPoint identifies the Thruvision TS4 and TS5 systems with pictures and descriptions and ties the Army and Air Force to use of one or both of the products within the relevant period.[14] *Id.* at 7, 15. Like *Disc Disease*, although the allegations in the Amended Complaint are conclusory, the identification of the accused devices by picture and name, combined with the relatively straightforward nature of the alleged infringement (which implicates only one of three independent claims in the '511 Patent, *see* '511 Patent at 14:49–60; 16:13–22; 16:29–38), provides the level of notice and plausibility required to survive a Rule 12(b)(6) motion. *See Disc Disease*, 888 F.3d at 1260; *see also* ECF No. 11-3 at 2–6.

The Government argues that Plaintiff has not plausibly pled such claims against the Air Force and Army because it has not presented "relevant contracts or other indicia of the alleged infringement." ECF No. 19 at 16; *see also* ECF No. 17 at 22 (representing that "a search of the Federal Procurement Data System – Next Generation identified a single time-barred procurement by the Air Force and no procurements by the Army from Thruvision"). At this preliminary stage, that is not what the pleading standard requires. *See Disc Disease*, 888 F.3d at 1260; *Lifetime*

---

[14] Notably, the PowerPoint presentation also identifies TSA as a customer of Thruvision products in the mass transit market, providing further factual support for Plaintiff's allegation that TSA has used infringing passive detection systems. ECF No. 11-4 at 13.

*Indus.*, 869 F.3d at 1379 ("[Defendant's] complaints concerning lack of detail ask for too much.").
On a motion to dismiss, Plaintiff need not prove its case or even plead its claim of infringement
element by element. *Bot M8*, 4 F.4th at 1352; *see Henke*, 60 F.3d at 797 (courts "assume all factual
allegations to be true and . . . draw all reasonable inferences in plaintiff's favor" in deciding a Rule
12(b) motion). As such, the Government's Motion is denied as to Plaintiff's post-2014 passive
detection claims against the Air Force and Army.

3.    Vehicle Collision Detection Claims

Plaintiff alleges that the Government violates claims 1 and 15 of the '511 Patent through
its purchase of "hundreds of thousands of vehicles from U.S. automakers and tens of thousands of
vehicles from foreign automakers" containing collision detection technology. ECF No. 11 ¶¶ 98–
99. As factual support, the Amended Complaint cites contracts for the purchase of Chevrolet
Suburban 3500s by the State Department, Chevrolet Suburban "Executive Protection Vehicles" by
the Department of Veterans Affairs, and Ford Police Explorers by the FBI, as well as the Secret
Service's repair of a 2018 Dodge Charger. *Id.* ¶¶ 100–03.

The Government argues that Plaintiff's claims involving Ford and General Motors ("GM")
are precluded under the doctrine of *Kessler v. Eldred*, 206 U.S. 285 (1907), because Plaintiff
brought claims directly against both companies in related litigation and those suits have since been
dismissed with prejudice. *See* ECF No. 17 at 24 (citing *JG Techs. LLC v. Ford Motor Co.*, No.
2:20-cv-165 (E.D. Tex. filed May 31, 2020); *JG Techs. LLC v. Gen. Motors, LLC*, No. 2:20-cv-
166 (E.D. Tex. filed May 31, 2020)); ECF No. 19 at 17. Nowhere in Plaintiff's Opposition does
it dispute this argument. *See* ECF No. 18 at 27. As such, Plaintiff concedes its vehicle collision
detection claims premised on the Government's use of Ford and GM vehicles. *See Cardiosom,
LLC v. United States*, 91 Fed. Cl. 659, 664 (2010), *rev'd on other grounds*, 656 F.3d 1322 (2011).

Regarding the allegations related to the 2018 Dodge Charger, the Government argues that repair of this vehicle cannot constitute a new infringement as a matter of law. ECF No. 17 at 24. In response, Plaintiff contends that the purpose of its reliance on the contract for repair of the Dodge Charger is to illustrate government use within the relevant period, calling the Government's repair/reconstruction argument irrelevant. ECF No. 18 at 27. Although the Court agrees with Plaintiff that the purpose of the contract is to illustrate use, not an infringing act in the repair itself, Plaintiff nonetheless fails to state facts sufficient to support a claim of infringement based on this contract.

Beginning with the claim chart, Plaintiff describes in detail the manner in which the accused instrumentalities—for example, Fiat/Chrysler cars equipped with the Forward Collision Warning-Plus system—allegedly infringe the '511 Patent. Fiat/Chrysler Claim Chart at 2–3, ECF No. 11-17. It also provides evidence that identifies accused systems by name and the types of vehicles that possess those systems. *Id.* at 7. What is lacking is adequate factual support that ties the accused instrumentalities to government use. *BotM8*, 4 F.4th at 1352 (the plaintiff must allege facts sufficient for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged") (quoting *Iqbal*, 556 U.S. at 678).

The facts Plaintiff alleges do not allow the Court to conclude or reasonably infer that the Government used or is using Chrysler vehicles that have the infringing collision detection systems. *See* ECF No. 11-14 at 2; ECF No. 17-1 at 66–71. The contract submitted with the Amended Complaint does not indicate whether the 2018 Dodge Charger that was repaired in 2018 was equipped with such technology. *See* ECF No. 11-14 at 2. As Plaintiff's exhibits suggest, 2018 Dodge vehicles "*can be* equipped" with infringing technology that was "*available*" at the time for

Dodge Chargers.[15]  ECF No. 11-17 at 7 (emphasis added) (describing the Full-speed Forward Collision Warning-Plus system, which "operates with all the capabilities of Forward Collision Warning-Plus").  Plaintiff, however, has not pled any facts supporting the inference that the infringing technology is a standard feature of these vehicles; in fact, the materials submitted could support the opposite inference thereby undercutting Plaintiff's allegations. *See id.*; *Bot M8*, 4 F.4th at 1354.  At most, Plaintiff's allegations suggest that it is *possible* that the 2018 Dodge Charger (or other such vehicles in the Government's fleet) have technology that infringes the '511 Patent, but Plaintiff has not provided enough information to suggest the allegation is plausible.  *See Bot M8*, 4 F.4th at 1352 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" (quoting *Iqbal*, 556 U.S. at 679)).

Accordingly, Plaintiff's vehicle detection claims are dismissed for failure to state a claim.

**E.      Plaintiff's Alternative Request for Leave to Amend Its Complaint Is Denied.**

In its Opposition, Plaintiff requested that it be allowed to file a second amended complaint if the Court believes any of its claims are insufficiently pled. ECF No. 18 at 27–28.  Plaintiff argues that justice requires amendment considering its allegations that the Government secretly used infringing devices, as well as its discovery—after filing its Amended Complaint—of articles supporting its aircraft detection claims.  *Id.*  The Government calls the request to amend "futile" and notes that Plaintiff has not separately moved for leave to amend, attempted to obtain the

---

[15] Plaintiff's remaining exhibits in support of its vehicle collision detection claim are similarly unsupportive.  At most they demonstrate that several vehicles produced by Chrysler, Dodge, Jeep, Ram, and FIAT *can be* equipped with vehicle detection technology, not that they are likely to be, or in fact are, equipped with such technology.  Nor do they lend plausibility to the allegations that the Government uses vehicles with the alleged infringing technology. *See, e.g.*, ECF No. 11-17 at 7.

Government's written consent, or provided a proposed amended pleading to either the Court or the Government.  ECF No. 19 at 18.

The Court should grant leave to amend the pleadings "freely . . . when justice so requires." RCFC 15(a)(2).  If the Court deems amendment futile, however, it may deny leave to amend on that basis.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  To defeat a futility objection, the moving party must provide facts demonstrating that the amended pleading could survive dispositive motions and would not be tainted with the same defects found in the existing complaint. *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1355 (Fed. Cir. 2006); *see Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1333 (Fed. Cir. 2000).

Plaintiff's amendment request is denied.  Plaintiff's one-paragraph request lacks sufficient factual detail or legal argument to allow the Court to conclude that amendment would be a worthwhile endeavor.  *See Kemin Foods*, 464 F.3d at 1355.  As discussed, Plaintiff has failed to demonstrate secret use in this case, either in opposition to the Motion to Dismiss or in the Amended Complaint, which include only conclusory allegations of secret use devoid of any factual support. The only other basis for Plaintiff's amendment request pertains to the articles it discovered relating to Russian use of anti-stealth technology and the Navy's desire for ultraviolet cloaking devices. *See* ECF No. 18 at 27–28.  Two of these articles were published in 2012 and thus available to Plaintiff long before it filed even the original Complaint.  Regardless, since the Court has already concluded that the articles are insufficient to support jurisdiction, allowing amendment to include these materials in the pleadings would be futile.  *See Kemin Foods*, 464 F.3d at 1355.  As such, Plaintiff's alternative request for leave to amend the Complaint for a second time is denied.

### III. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the Government's Partial Motion to Dismiss (ECF No. 17) is **GRANTED IN PART** and **DENIED IN PART**.  The Court **DENIES** the Government's Motion as to the alleged infringement claims premised on the CBP Call Order for Thruvision technology donated to the Mexican Government, the TSA's use of Thruvision technology in the Los Angeles transit system and New York City's Penn Station, as well as the Air Force and Army's post-2014 use of Thruvision technology.  The Motion is **GRANTED** as to each of Plaintiff's remaining claims, with the exception of the claims premised on the two post-2014 TSA contracts with Thruvision not at issue in the Government's Motion.  Plaintiff's alternative request for leave to amend is **DENIED**.

The Court further **ORDERS** that the Government's first Motion to Dismiss (ECF No. 9) is **DENIED AS MOOT**.

This opinion is being filed under seal because it cites to and discusses documents appended to Defendant's first Motion to Dismiss, which were filed under seal.  The Court will unseal this opinion in its entirety after **November 10, 2021**, unless the parties submit by **no later than November 5, 2021**, an objection specifically identifying the sensitive and/or protected information subject to redaction.  Any objecting party must submit a proposed redacted version of the decision and provide the reason(s) supporting the party's request for redaction.

**SO ORDERED**.


Dated: October 29, 2021                    */s/ Kathryn C. Davis*
                                                    KATHRYN C. DAVIS
                                                    Judge